# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | )    No. 25-cr-94 |
| v. | ) |
| | ) |
| OSCAR MISAEL VENTURA VENTURA, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S MOTION TO SUPPRESS

Defendant Oscar Misael Ventura-Ventura, through undersigned counsel, respectfully moves this Court to suppress all evidence arising from his seizure, search, and arrest on August 9, 2023. This case arises out of a police encounter with three young men who were sitting on a sidewalk. During this encounter, law enforcement came to suspect that one of them, Mr. Ventura-Ventura, was in possession of tobacco while under the age of twenty-one (a civil infraction). With no reasonable suspicion that a crime had been committed or that Mr. Ventura-Ventura was armed and dangerous, the officers seized Mr. Ventura-Ventura and searched him. During the unlawful search, the government alleges that they found a firearm. Mr. Ventura-Ventura was then arrested, and narcotics were found during a subsequent search.

The seizure and search of Mr. Ventura-Ventura violated his Fourth Amendment rights, as it was performed without legal basis. As such, the defense moves to suppress all evidence, including any statements made by Mr. Ventura-Ventura, arising from the events of August 9, 2023.

I. **Factual Background**

On August 9, 2023, Fairfax County Police initiated an encounter with three Hispanic males who were sitting on a sidewalk in a residential neighborhood: Oscar Ventura-Ventura, Salvador Guerrero-Guerrero, and Jose Lainez-Carranza. *See* Exhibit 1, Incident/Investigation Report. The officers were responding to a report of men urinating on a nearby fence. One of the responding officers, Officer McCarthy, made contact with the three men. There was no indication that any of the men were urinating or had previously urinated in public. Officer McCarthy asked if anyone was urinating in public. Mr. Guerrero-Guerrero immediately responded and denied this. During the encounter, it becomes clear that Mr. Guerrero-Guerrero is the only one of the three men who speaks English. After dispelling the reason for the initial interaction, Officer McCarthy prolonged the encounter.[1]

Seemingly suspicious of the men for unclear reasons, Officer McCarthy begins asking for identification and personal information from the three men. All three men complied and provided their full names, addresses, and dates of birth. At that point, Officer McCarthy learned that Mr. Guerrero-Guerrero lived down the street from where the stop occurred. Based on the information provided by Mr. Ventura-Ventura, Officer McCarthy learned that Mr. Ventura-Ventura was 20 years old. Officer McCarthy stated in English that in Virginia, you must be twenty-one to possess tobacco.[2] Officer McCarthy put on gloves, asked the three men whether they "have anything on [them that they] shouldn't have," and asked each of the three men whether they would consent to a search. Mr. Guerrero-Guerrero declined, and he was not searched. Mr. Lainez-Carranza did not appear to understand the request. After Mr. Guerrero-Guerrero translated the request, Mr. Lainez-Carranza agreed to be searched, and marijuana was

---

[1] Of note, law enforcement later learned that the men received permission from the homeowner where the stopped occurred to congregate there and smoke.
[2] Va. Code Ann. § 18.2-371.2 (2024). Violation of which is subject to only a civil penalty, not criminal charges.

2

found, but no weapons. Mr. Lainez-Carranza is over the age of 21, and it was not unlawful for him to possess the small amount of marijuana found.

At 6:37PM, Officer McCarthy asked Mr. Ventura for consent to search. Mr. Ventura-Ventura declined. Notably, after Mr. Guerrero-Guerrero declined to be searched, Officer McCarthy did not search Mr. Guerrero-Guerrero. After Mr. Ventura-Ventura refused, Officer McCarthy made it clear that the search was not volunary. To justify his search, McCarthy stated, "You're underage, you have cigarettes; you need to stand up. You're not twenty-one." Officer McCarthy knew that underage possession of tobacco products was a civil infraction. Notwithstanding, Officer McCarthy directed Mr. Ventura-Ventura to stand up to be searched. The basis of the search was to determine whether Mr. Ventura-Ventura had additional cigarettes.[3] During the unlawful search of Mr. Ventura-Ventura, Officer McCarthy felt what he believed to be a handgun, and another officer placed Mr. Ventura-Ventura under arrest. Mr. Ventura-Ventura was moved to a police vehicle where a further search was performed. Mr. Ventura-Ventura was later transported to the Mount Vernon District Station and held without bond.

Mr. Ventura-Ventura was charged with Possession of a Schedule I/II Drug with Intent to Distribute, Possession of a Firearm While Selling Schedule I/II Drug, Possession of a Firearm by an Illegal Alien, and Possession of Tobacco/Marijuana Underage in the Fairfax County General District Court, Case No. GC23111320-4. He retained Patrick M. Blanch to represent him. Mr. Blanch identified several issues related to the search of Mr. Ventura-Ventura and the corresponding criminal charges. In communications with the Fairfax County Commonwealth Attorney's Office, Mr. Blanch started off with the undisputed fact that Mr. Ventura-Ventura was

---

[3] *See* Exhibit 1 ("With knowledge of him being 20 years of age and smoking a cigarette, I believed that he had further cigarettes on his person as there was a crushed box of cigarettes behind him to his left and another box between him and Salvador.")

3

searched without a warrant. Mr. Blanch noted that even if probable cause existed that Mr. Ventura-Ventura may have had additional cigarettes, no search could be conducted unless an exception to the warrant requirement existed or a search warrant was obtained. Mr. Blanch also noted that law enforcement did not have any suspicion of criminal activity before the search of Mr. Ventura-Ventura, and certainly no suspicion that Mr. Ventura-Ventura was armed and dangerous. Accordingly, Mr. Blanch argued that the search of Mr. Ventura-Ventura was unlawful and the evidence was subject to exclusion.

The Fairfax County Commonwealth Attorney's Office appears to have agreed with Mr. Blanch. Mr. Ventura-Ventura later pleaded guilty to the civil offense of possession of tobacco by a minor. The Commonwealth Attorney's Office entered a *nolle prosequi* on the remaining charges. *See* Exhibit 2, Trial Advisement and Plea. On March 13, 2025, a Criminal Complaint was filed in this Court charging Mr. Ventura-Ventura with Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. § 922(g)(5)(A). The charge relates to the allegation that Mr. Ventura-Ventura possessed a firearm on August 9, 2023, which is the same conduct that led to the charges filed in Fairfax County.

## II.     Legal Background

The Fourth Amendment of the United States Constitution guarantees the right of people to be secure in their persons and protects them against unreasonable searches and seizures by the police. U.S. CONST. Amend IV. Warrantless seizures are presumptively unreasonable. *See Katz v. United States*, 389 U.S. 347, 357 (1967). The Supreme Court has held that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Katz* 389 U.S. at 357 (footnotes omitted). Where the government

seeks to introduce evidence seized without a warrant, it carries the burden of showing that the evidence falls within one of the "few specifically established and well delineated exceptions" to the warrant requirement of the Fourth Amendment. *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971); *Katz*, 389 U.S. at 357.  Thus, where, as here, police officers act without a warrant, the government has the burden of showing their actions are constitutional under the Fourth Amendment. *United States v. Jeffers*, 342 U.S. 48, 51 (1951); *United States v. Davis*, 997 F.3d 191, 196 (4th Cir. 2021) (internal citations omitted)

The "central inquiry" for whether a Fourth Amendment violation has occurred is in determining "the reasonableness of the particular governmental invasion of a citizen's personal security." *California v. Hodari D.*, 499 U.S. 621, 636 (1991) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968). To satisfy the Fourth Amendment reasonableness standard, the officer is required to be able to identify "specific and articulable facts" which, when considered with the according rational inferences, "reasonably warrant [the] intrusion."  *Terry*, 392 U.S. at 21 (where the defendants' repeated casing of a store was found to be a specific, articulable fact which the officer reasonably relied on in commencing a warrantless search and seizure).

A person is considered seized when an "officer, by means of physical force or show of authority, terminates or restrains his freedom of movement*." Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal citations and quotation marks omitted).  There can still be a seizure where there is "a show of authority and without the use of physical force," so long as "actual submission" on the part of the seized occurs.  *Id.* (where defendant's apparent submission to the deputy by remaining idle in his car during a traffic stop was evidence of a seizure by show of authority). When determining whether a seizure by way of a "show of authority" has occurred, the Supreme Court has historically looked to whether "in view of all the circumstances

5

surrounding the incident, a reasonable person would have believed that he was not free to leave." *Hodari D.*, 499 U.S. at 628 (internal citations and quotation marks omitted).

While the Constitution permits seizures in the form of temporary investigative detentions that may not rise to the level of an arrest (*Terry* stops), the specific and articulable facts in question must give rise to the reasonable suspicion that a crime was being committed. *See Terry*, 392 U.S. at 22 ("One general interest is of course that of effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.")

A search as implicated in the Fourth Amendment can range from an intensive, full-blown search to a "limited search of the outer clothing for weapons" – a frisk. *Terry*, 392 U.S. at 24. The determination of whether such a frisk is reasonable weighs the individual's Constitutionally-protected right to personal security against law enforcement's interest in protecting themselves from concealed weapons. *See Maryland v. Buie*, 494 U.S. 325, 332 (1990); *see Terry*, 392 U.S. at 26–27. For a law enforcement officer's belief that a frisk is necessary to be reasonable, they must be able to point to "specific and articulable facts" which warrant a belief that they are "dealing with an armed and dangerous individual." *Buie*, 494 U.S. at 332 (internal citations and quotations omitted). The reasonableness inquiry should not give weight to an "inchoate and unparticularized suspicion or hunch" of the officer, but consider the "specific reasonable inferences which he is entitled to draw from the facts" before him. *Terry*, 392 U.S. at 27 (where defendants were suspected of actively preparing for a robbery, which often involves use of weapons); *see also United States v. Mayo*, 361 F.3d 802, 807 (4th Cir. 2004) (where factors

including specific location, the defendant putting a hand on something heavy in his pocket, attempting to evade police scrutiny, and palpable nervousness gave rise to the reasonable inference of possessing a weapon). Here, Mr. Ventura-Ventura was suspected of committing a *civil* infraction and declined consent to be searched. A seizure and search under these circumstances is unreasonable, and evidence obtained must be suppressed.

### III.   Argument

The evidence in this case must be suppressed as the fruit of the unlawful search and arrest of Mr. Ventura-Ventura. The officers had no warrant and insufficient reasonable suspicion to search, detain, and arrest Mr. Ventura-Ventura. None of the recognized exceptions under the Fourth Amendment that could permit a warrantless search are present. All of the evidence at issue in this case was obtained directly from an unconstitutional search, seizure, and arrest, and therefore should be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (holding that if the evidence has been obtained through the exploitation of a Fourth Amendment violation, the evidence must be suppressed). When officers searched Mr. Ventura-Ventura, they did not have "specific and articulable facts" that he was engaging in criminal activity. *Terry* 392 U.S. 1 at 21-22, 30.

### Mr. Ventura-Ventura Was Unlawfully Seized

Here, the conduct of law enforcement on August 9, 2023, fails to justify a search of Mr. Ventura-Ventura. Based on the facts articulated by Officer McCarthy, he seized Mr. Ventura-Ventura based on the belief that he possessed tobacco. Underage possession of tobacco is not a crime—it is a civil offense. There was no reasonable suspicion that a crime was being committed. Additionally, there were no facts that would lead Officer McCarthy to conclude that Mr. Ventura-Ventura was armed and dangerous, thus there was no justification for the frisk that

7

led to his arrest.

Officer McCarthy seized Mr. Ventura-Ventura by way of a show of authority when he demanded that Mr. Ventura-Ventura stand up and submit to a search. While the initial encounter may have been based on a report of public urination, Officer McCarthy did not seize Mr. Ventura-Ventura until he was suspected of underage possession of tobacco. This distinction bifurcates the encounter as the search could not have been conducted with the objective of finding evidence of public urination. Officer McCarthy's own words identify the basis of the search. Officer McCarthy told Mr. Ventura-Ventura, "[y]ou're underage, you have cigarettes; you need to stand up. You're not twenty-one." By unambiguously stating that it was not a choice when Mr. Ventura-Ventura attempted to refuse the search, Officer McCarthy made it clear that Mr. Ventura-Ventura was not free to leave. Mr. Ventura-Ventura's actual submission to McCarthy's show of authority is evidence that the seizure occurred. After recognizing that an invasion of Mr. Ventura-Ventura's personal security occurred, the question becomes whether the invasion was based on the reasonable suspicion that a crime was being committed. *Terry*, 392 U.S. at 22.

In his Investigation Report, Officer McCarthy clearly stated that the facts he justified the seizure on were those which gave rise to the inference that Mr. Ventura-Ventura was possessing tobacco while under twenty-one. Officer McCarthy believed Mr. Ventura-Ventura "had further cigarettes on his person." In the Commonwealth of Virginia, underage possession of tobacco is not a criminal offense. Va. Code Ann. § 18.2-371.2 (2024). It is a non-arrestable offense that is "punishable by a civil penalty not to exceed $100 for a first violation and a civil penalty not to exceed $250 for a second or subsequent violation." Va. Code Ann. § 18.2-371.2(e). Even if Officer McCarthy believed Mr. Ventura-Ventura was smoking marijuana, that is also a civil

offense. Va. Code § 4.1-1105.1. The seizure and search of Mr. Ventura-Ventura was not based on the reasonable suspicion that a crime was being committed. As such, the seizure by show of authority represents a violation of Mr. Ventura-Ventura's right to be secure in his person against unreasonable seizures.

### The Warrantless Search of Mr. Ventura-Ventura Was Unlawful

Mr. Ventura-Ventura was unlawfully searched when he was frisked by Officer McCarthy. There was no basis to believe he was armed and dangerous. The "pat down, prior to searching for further tobacco products," which led to Officer McCarthy finding a handgun on Mr. Ventura-Ventura, was the conduct addressed by the Supreme Court in *Terry*. *Terry*, 392 U.S. at 22. It was the exact "limited search of the outer clothing for weapons" that the Supreme Court was concerned with. As such, the frisk constituted a search in terms of the Fourth Amendment. Here, there were no "specific and articulable facts" that would give rise to the reasonable inference that Mr. Ventura-Ventura was an "armed and dangerous individual." *United States v. Adkinson*, 191 F. Supp 3d 565, 570 (E.D.Va. 2016) (internal citations omitted).

The Investigation Report does not attempt to articulate facts leading Officer McCarthy to believe Mr. Ventura-Ventura was armed and dangerous at the time of the search. Officer McCarthy likewise does not make any comments in the body worn camera suggesting a particularized belief that Mr. Ventura-Ventura had a weapon. In *Mayo*, the Fourth Circuit recognized specific location, the apparent presence of something heavy the defendant was holding in his pocket, attempts to evade the police, and extreme nervousness as specific and articulable facts which, together, allowed the officers to make the reasonable inference he was armed and dangerous. *Mayo*, 361 F.3d at 807. In *El*, the Court found a search reasonable under *Terry* where the defendant appeared nervous and officers saw the defendant moving hand

9

towards a bulge in his waistband. *United States v. El*, 5 F.3d 726, 731 (4th Cir. 1993). Specific and articulable facts warranting a belief that Mr. Ventura-Ventura was committing a criminal offense *and* that he was armed and dangerous are simply missing. *Adkinson*, 191 F. Supp. 3d at 571 (granting motion to suppress where officers did not have a reasonable suspicion that the defendant was armed and dangerous.) The justification of the search of Mr. Ventura-Ventura is Officer McCarthy's "inchoate and unparticularized suspicion." The search of Mr. Ventura-Ventura was not reasonable and represents a violation of his Fourth Amendment rights.

The protections offered by the Constitution are fundamental to our ordered society and are safeguards against unjustified police intrusion. However, the Fourth Amendment "contains no provision" by which it can be enforced, making the "deterrent effect" of the exclusionary rule a necessary means to effectuate the Amendment's protections. *United States v. Leon*, 468 U.S. 897, 906 (1984)

**The Post-Arrest Statements of Mr. Ventura-Ventura Violate *Miranda*[4]**

After he was arrested, Mr. Ventura-Ventura was questioned by law enforcement. A statement "made during a custodial interrogation will be suppressed unless police advise the defendant of his rights under *Miranda* [] and the defendant knowingly, intelligently, and voluntarily waives those rights." *United States v. Holmes*, 670 F.3d 586, 591 (4th Cir. 2012) (internal citations omitted). Here, Mr. Ventura-Ventura invoked his right to remain silent, but law enforcement ignored his invocation and questioned him. This renders his post-arrest statements unlawfully obtained, and they should be suppressed.

According to the Investigation Report, "Oscar [Ventura-Ventura] was later advised of his Miranda Rights in Spanish by PFC Velasquez, which he stated he understood his rights. Post

---

[4] The government has represented that it does not intend to use any statements by Mr. Ventura-Ventura made after his arrest on August 9, 2023, but it may use his statement in March 2025.

10

Miranda, Oscar admitted that he was not a US Citizen and previously admitted that he did not have a social security number." Exhibit 1 at 5. This claim is repeated in the Affidavit submitted in connection with the Criminal Complaint filed in this matter, where Special Agent Jason R. Bahmer states, "A FCPD officer advised VENTURA of his Miranda rights. VENTURA said that he understood his rights and agreed to speak with the officer. VENTURA said that he was not a United States citizen and did not have a Social Security number." ECF Dkt. No. 2 at ¶ 11. Neither contention is accurate, and the body-worn camera contradicts these claims. Mr. Ventura was advised of his rights and informed law enforcement that he *did not* want to speak with them. After asserting his right to remain silent, law enforcement asked Mr. Ventura-Ventura whether he was in the county illegally and whether he was from El Salvador. Any statements made by Mr. Ventura-Ventura must be suppressed as they were obtained after he invoked his rights under *Miranda*.

### IV.    Mr. Ventura-Ventura's statements and any evidence must be suppressed.

The exclusionary rule prevents "the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States*, 564 U.S. 229, 231–32. The rule applies where the "Government seeks to use such evidence to incriminate. *United States v. Calandra*, 414 U.S. 338, 348 (1974). It serves to suppress both "evidence obtained during illegal police conduct," as well as "evidence that is the indirect product of the illegal police activity." *United States v. Oscar-Torres*, 507 F.3d 224, 227 (4th Cir. 2007). The indirect product doctrine, also known as the "fruit of the poisonous tree," requires the suppression of evidence that was discovered as a result of exploiting the illegal conduct. *Wong Sun*, 371 U.S at 471; *United States v. Terry*, 909 F.3d 716, 720 (4th Cir. 2018) (internal citation omitted) ("defendants may seek to suppress not only evidence obtained as a direct result of an illegal search but also evidence later

discovered as a result of that search").

When it is established that the government performed an unlawful search, the "burden is on the government to show that evidence was not obtained as a direct result of the illegal search." *Davis*, 997 F.3d at 196. Here, that burden cannot be met. But for Officer McCarthy's illegal seizure and subsequent search of Mr. Ventura-Ventura, he would not have found a handgun on Mr. Ventura-Ventura, arrested him, performed a search incident to arrest, and identified the bag of pills. Additionally, any statements made by Mr. Ventura-Ventura while in police custody would not have occurred. All the evidence against Mr. Ventura-Ventura arises from the unlawful seizure and search, and it must be suppressed.

## V. Conclusion

Law enforcement seized and searched Mr. Ventura-Ventura without reasonable suspicion of a crime or particularized belief that he was armed and dangerous. These actions violated his Fourth Amendment rights, and any statements and evidence obtained because of the violation must be suppressed.

Respectfully Submitted,

/s/
Marc Eisenstein
Coburn Greenbaum & Eisenstein PLLC
1710 Rhode Island Avenue, N.W.
Second Floor
Washington, DC 20036
Phone: (703) 963-7164
Fax: (866) 561-9712
marc@coburngreenbaum.com

*Counsel to Defendant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 2, 2025 a copy of the foregoing was filed with the Clerk of the Court and served on all counsel of record via ECF.

/s/

Marc Eisenstein